UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WILLIAM ICKOM, INDIVIDUALLY and
ON BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF ANTHONY ICKOM,
DECEASED                                                                    PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:10-cv-568-DPJ-FKB

SCOTT COUNTY, MS., WILLIAM S. RICHARDSON
Individually and in His Capacity as Former Sheriff of
Scott County, JIM KELLOGG, HAROLD JONES,
TIM TADLOCK, LINDA KEETON, NANCY GRANT,
VERONICA RASCO, JACKIE WARE, FRANCIS
MARTIN, Individually and in Their Capacities as
Current or Former Law Enforcement Officers,
Employees, Agents and/or Servants of Scott County
Sheriff's Department                                                              DEFENDANTS

ORDER

This § 1983 action is before the Court on the motion of Defendants Linda Keeton, Nancy

Grant, Veronica Rasco, and Jackie Ware (a/k/a Jacqueline McBride) in their individual

capacities, for summary judgment premised on qualified immunity.  Defs.' Mot. Summ. J. [11].

The Court, having considered the parties' submissions in light of the applicable authority,

concludes that the motion should be granted.

I.      **Facts and Procedural History**

Plaintiff William Ickom ("Ickom") filed this action on behalf of himself and the

wrongful-death beneficiaries of Anthony Ickom against Scott County, Mississippi, William S.

Richardson as former Sheriff of Scott County, Jim Kellogg, Harold Jones, Tim Tadlock, Linda

Keeton, Nancy Grant, Veronica Rasco, Jackie Ware, and Francis Martin for alleged

constitutional violations that occurred between September 1 and October 14, 2007.  Because the

instant motion addresses Ickom's claims against Keeton, Grant, Rasco, and Ware in their individual capacities, this Court will summarize only the facts relevant to them.

Ickom is the brother of Anthony Ickom ("Anthony"), deceased.  On September 1, 2007, Scott County deputies arrested Anthony and took him to the Scott County Detention Center ("SCDC") where he remained awaiting trial.  While at the SCDC, Anthony complained of stomach pains.  Ickom alleges that Defendants completely ignored these requests for treatment throughout Anthony's time at SCDC.  But Anthony's medical records indicate otherwise, documenting numerous treatments for Anthony's stomach issues.  Defs.' Mot. Summ. J. [11] Ex. C.  Ickom further contends *in his Complaint* that on October 13, 2007, despite Anthony's requests and the requests of fellow inmates who heard Anthony in pain, Defendants again failed to provide him with immediate medical treatment.  Instead, Defendants transferred Anthony to a holding cell, where he was found dead the morning of October 14, 2007.[1]  Ickom claims that Defendants' failure to provide appropriate medical attention led to Anthony's death.

Ickom sued the moving Defendants in their official and individual capacities for violations of due process, the right to be free from unreasonable seizure, the right to medical care, plus civil conspiracy and failure to prevent conspiracy under 42 U.S.C.§§ 1983, 1985, and 1986.  In this motion, Defendants seek summary judgment as to all claims against them in their individual, but not official, capacities.

---

[1]Neither party has provided the Court with Anthony's autopsy or death certificate, and the medical cause of Anthony's death is unknown.

2

II.     **Standard of Review**

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial responsibility to inform the district court of the basis for its motion and identify those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Importantly, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v.*

*Cal-W. Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010) (citations and quotations omitted).  The 2010 amendments to Rule 56 now make this abundantly clear.  Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials."  Moreover, Rule 56(c)(3) now states that [t]he court need consider only the cited materials, but it may consider other materials in the record."

## III.     Analysis

Defendants premise this motion on qualified immunity.  Qualified immunity is a shield from individual liability for  "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting  *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It is "an entitlement not to stand trial or face the other burdens of litigation."  *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense.  *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).  In the summary judgment posture, the court  "'looks to the evidence before it (in the light most favorable to the plaintiff).'"  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the court must determine "'whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). Thus, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights." *Id*. Whether the official acted with objective reasonableness is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Finally, it is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). In particular, *Pearson* observed that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 555 U.S. at 237. [2]

---

[2]In his Complaint, Ickom alleges that Defendants violated the Fourth and Fourteenth Amendments. But in his summary-judgment response, Ickom claims that Defendants also violated the Eighth Amendment. The Eighth Amendment is not applicable because Anthony was a pretrial detainee. *Graham v. Connor*, 490 U.S. 386 (1989). Regardless, this argument is not properly raised. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th

A.        Failure to Provide Medical Care

Ickom claims Defendants denied Anthony adequate medical care between September 1 and October 14, 2007.  It is well established that "pretrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials."  *Thompson*, 245 F.3d at 457 (collecting cases).

> Deliberate  indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur.

*Id.* at 458 -9 (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649-50 (5th Cir. 1996)). Deliberate indifference cannot, however, "be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."  *Id.* at 459 (internal citations omitted). Finally, "[t]o be liable under section 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of the person and the constitutional violation sought to be redressed."  *Wenzl v. Hegmann*, 1994 WL 708765, *4 (5th Cir. Nov. 30, 1994) (citation omitted).  "Section 1983 does not create vicarious or *respondeat superior* liability."  *Monell v. N. Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

To begin with, the Court must disregard most of the facts listed in Ickom's Response because they are based solely on the assertions in the Complaint.  *See Celotex*, 477 U.S. at 324

---

Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

(explaining that the non-movant must go beyond the pleadings and may not rely on the allegations of the Complaint).  As for the record that does exist, it is undisputed that the prison was under contract with Health Assurance, LLC, for the provision of medical care; that Health Assurance—through its on-site physicians and nurses—made all decisions regarding Anthony's medical care and/or treatment; that Anthony was repeatedly seen by professional healthcare providers during his detention; that he generally complained of constipation and stomach aches; that he was seen four times the day before his death;[3] that the Defendants who interacted with Anthony on prior occasions requested medical care for him; that the moving Defendants were not present at the jail the day he died; that Anthony was not in distress when they last saw him; and that he did not exhibit any life-threatening or serious medical needs while in the moving Defendants' presence.  *See* Def.'s Mot. [11] Exs. C–I.

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  Here, Defendants' record evidence stands unrebutted and reflects no causally-significant personal involvement and no deliberate indifference.  Absent evidence of contradictory facts, there is nothing precluding the entry of summary judgment in Defendants' favor.

Finally, the claims against Captain Keeton fail for an additional reason.  Keeton states in her affidavit that she had no involvement with Anthony whatsoever.  Personal involvement is necessary to state a § 1983 claim absent a viable theory of supervisory liability. *See Porter v.*

---

[3]The cause of death is not established and may have nothing to do with his prior complaints.

7

*Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (listing theories of supervisory liability).  Therefore,

Defendants seem to infer that Ickom must be asserting a supervisory liability claim against

Captain Keeton.  But Ickom never pleaded this theory.  *See Cutrera*, 429 F.3d at 113 ("A claim

which is not raised in the complaint but, rather, is raised only in response to a motion for

summary judgment is not properly before the court.").  And to the extent such a claim can be

inferred from the Complaint, Ickom abandoned the claim when he ignored this portion of

Defendants' motion.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)

("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment.").

Regardless, for the reasons stated in Defendants' motion, the record fails to reflect any personal

involvement by Keeton or basis for supervisory liability.[4]

     B.    Conspiracy Claims

     The moving Defendants also argue that Ickom's § 1985 and § 1986 civil conspiracy

allegations fall short.

> To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege:  (1) a
> conspiracy involving two or more persons;  (2) for the purpose of depriving,
> directly or indirectly, a person or class of persons of the equal protection of the
> laws;  and (3) an act in furtherance of the conspiracy;  (4) which causes injury to a
> person or property, or a deprivation of any right or privilege of a citizen of the
> United States.  In so doing, the plaintiff must show that the conspiracy was
> motivated by a class-based animus.

*Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994).

---

[4] Plaintiff requests additional discovery to identify which officials were present when
Anthony died.  The request was not in the form of a motion and did not otherwise comply with
Rule 56(d).  Regardless, such discovery would have no bearing on the moving Defendants'
motion.

Ickom claimed in his Complaint that the Defendants conspired "to deprive [Anthony] of the equal protection of the laws as set forth in the First and Fourteenth Amendments under the Constitution . . . ." Pl.'s Amd. Compl. [2] ¶32.  This claim fails for several reasons.  First, Ickom makes only passing reference to the claim in his response and has not explained why it should survive.  Second, he has offered no evidence of a conspiracy.  Third, assuming Ickom had presented evidence supporting the existence of a conspiracy, nothing about Ickom's allegations suggests the required "a class-based animus."  As such, Ickom's § 1985 claim fails.  And, because a § 1986 neglect-to-prevent-a-conspiracy claim presupposes a § 1985 conspiracy, dismissal of the § 1986 claim is also in order.  *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).

     C.    Service of Process

It is not apparent from the record whether all Defendants have been properly served. There are no returns docketed, and Defendants Harold Jones, Jim Kellogg, Francis Morton, William S. Richardson, and Tim Tadlock have never answered.  Plaintiff is therefore ordered to demonstrate which Defendants have been properly served and show cause, if any he may have, why any unserved Defendants should not be dismissed without prejudice for failure to comply with Rule 4(m) of the Federal Rules of Civil Procedure.  Plaintiff's response is due 14 days after entry of this Order.

**IV.    Conclusion**

Based on the foregoing, the Court finds that the moving Defendants' motion for summary judgment should be granted.  It is, therefore, ordered that Ickom's claims against the moving Defendants in their individual capacities are dismissed.

It is further ordered that within 14 days of this Order, Plaintiff must identify those Defendants who have been properly served and show cause why all other Defendants should not be dismissed without prejudice for failure to comply with Rule 4(m).

**SO ORDERED AND ADJUDGED** this the 24th day of February, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

10